IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA ELENA AVILA,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:10-cv-01849 JLT<br><br>ORDER DIRECTING THE ENTRY OF<br>JUDGMENT IN FAVOR OF DEFENDANT<br>MICHAEL J. ASTRUE, COMMISSIONER OF<br>SOCIAL SECURITY, AND AGAINST<br>PLAINTIFF MARIA ELENA AVILA |

Maria Elena Avila ("Plaintiff") asserts she is entitled to disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred in finding her subjective complaints lacked credibility. Therefore, Plaintiff seeks judicial review of the administrative decision denying her claim for benefits. For the reasons set forth below, the administrative decision is **AFFIRMED**.

**PROCEDURAL HISTORY**[1]

Plaintiff filed an application for disability insurance benefits on June 30, 2005, which was denied initially and upon reconsideration. AR at 68. Plaintiff requested a hearing, which was held before an ALJ on May 1, 2007. *Id.* The ALJ determined Plaintiff was able to "simple, one-two-three step tasks" at a light exertional level, and therefore was not disabled as defined by the Social

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

Security Act. *Id.* at 72, 76. Therefore, the ALJ issued a decision denying benefits on September 3, 2008. *Id.* at 68-77. Plaintiff requested review of the decision by the Appeals Council.

While Plaintiff's application for benefits was pending before the Appeals Council, Plaintiff filed a new application for disability insurance benefits and an application for supplemental security income on November 20, 2008, alleging disability beginning August 20, 2008. AR at 167-76. The Social Security Administration denied these claims initially and upon reconsideration. *Id.* at 115-18, 122-26. Plaintiff requested a hearing and testified before an ALJ on April 27, 2010. *Id.* at 8, 22. The ALJ determined Plaintiff was not disabled as defined by the Social Security Act because she could perform work existing in significant numbers in the national economy. *Id.* at 8-17. Plaintiff requested the Appeals Council of Social Security review the decision, was denied on August 7, 2010. *Id.* at 2-4. Therefore, the ALJ's determination became the decision of the Commissioner.

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938). The record as a whole must be considered, as "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under Titles II and XVI of the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of

not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## **DETERMINATION OF DISABILITY**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f) (2010). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* In making these determinations, the ALJ must consider objective medical evidence and opinion (hearing) testimony. 20 C.F.R. §§ 404.1527, 416.927, 416.929.

A.   Relevant Medical Evidence

   *Treatment notes*

In 2008 and early 2009, Plaintiff complained of having headaches for several months, which Dr. Don Yoshimura observed was "a little atypical for migraine, tension [headache]." AR at 256. She described the headache as "mostly on top of [her] head," and stated they lasted briefly. *Id.* at 258, 315. She did not have nausea, photosensitivity, phonophobia, or neurological symptoms when suffering from a headache. *Id.* On March 16, 2009, Plaintiff had a routine physical exam and gynecologic visit with Dr. Jill Mason, who noted Plaintiff had "no unexpected weight loss/gain or

3

fatigue," and "no depression or anxiety." *Id.* at 320. Dr. Farzana Naeem observed Plaintiff's anxiety disorder was "asymptomatic" on February 12, 2010. *Id.* at 333.

*Physician's opinions*

Dr. Shireen Damania performed a consultative psychiatric evaluation on December 22, 2008. AR at 276- 80. Plaintiff reported she was an alcoholic, but had been sober for five years. *Id.* at 267-77. Also, she reported she chose not to be on any psychiatric medication because it did not help much and she was "on enough medications." *Id.* at 277. Dr. Damania observed Plaintiff appeared mildly anxious, and was tearful when she discussed the situation with her abusive ex-husband. *Id.* at 278. Further, Dr. Damania found: "There was no evidence of hallucinations or delusions. There was no evidence of a thought disorder. She was oriented to time, place, and person. Memory for recent past recall was intact. Attention span was within normal limits." *Id.* Dr. Damania diagnosed Plaintiff with an anxiety disorder, not otherwise specified, and gave her a GAF score of 61 to 63.[2] *Id.* at 279. Dr. Damania opined Plaintiff did not have difficulties with memory, concentration, persistence and pace. *Id.* Therefore, Dr. Damania concluded: "She is able to understand, carryout and remember three- and four-step job instructions in a work-like setting." *Id.* In addition, Plaintiff had the ability to respond appropriately to coworkers, supervisors, and the public, respond to usual work situations, and to deal with changes. *Id.* Thus, Dr. Damania opined Plaintiff did not have a mental impairment that limited her ability to engage in work activity. *Id.* at 280.

Dr. Adrianne Gallucci completed a mental residual functional capacity assessment and psychiatric review technique form on January 15, 2009. AR at 281-93. Dr. Gallucci believed Plaintiff had anxiety-related and substance addition disorders. *Id.* at 281. According to Dr. Gallucci, Plaintiff was "moderately limited" in the following abilities: to understand, remember, and carry out detained instructions; to maintain attention and concentration for extended periods; to interact appropriately with the general public; and to respond appropriately to changes in the work setting.

---

[2] Global assessment functioning ("GAF") scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.). A GAF score between 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.*

4

*Id.* at 295-96. Dr. Gallucci opined was "not significantly limited" in all other areas of understanding and memory, concentration, persistence, social interaction, and adaptation. *Id.* Therefore, Dr. Gallucci concluded Plaintiff was able to understand, remember, and carry out "very short and simple instructions;" maintain attendance; "complete a normal work day and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* at 297. Dr. Gallucci noted the prior ALJ limited Plaintiff to simple repetitive tasks, and affirmed this decision. *Id.* at 293.

Dr. Rustom Damania performed a consultative examination on January 21, 2009. AR at 299-303. Plaintiff complained of fatigue and headaches, which occurred two times a week and caused memory problems and difficulty with concentration. *Id.* at 299. Plaintiff had normal ranges of motion and her strength was "5/5 in both upper and lower extremities." *Id.* at 302. Dr. Damania opined: "The patient should be able to lift and carry 20 pounds occasionally and 10 pounds frequently. The patient should be able to stand and walk six hours out of a normal eight hour workday with appropriate breaks. The patient should be able to sit six hours." *Id.* at 303. In addition, Dr. Damania opined, "Due to her history of fatigue and liver cirrhosis, frequent bending, stooping and crouching would be impaired," but she could perform these movements on an occasional basis. *Id.* Dr. Damania concluded Plaintiff required some workplace environmental limitations due to her history of seizures, but did not have further manipulative, visual, or communicative limitations. *Id.*

Dr. Brian Ginsburg completed a physical residual functional capacity assessment on February 13, 2009. AR at 304-10. Dr. Ginsburg opined Plaintiff could frequently lift and/or carry ten pounds and twenty pounds occasionally. *Id.* at 405. Also, Dr. Ginsburg believed Plaintiff could stand, walk, or sit with normal breaks for about six hours in an eight-hour day. *Id.* Dr. Ginsburg opined Plaintiff was limited to occasional kneeling, crouching, crawling, and climbing ramps and stairs; she could never climb ladders, ropes, or scaffolds. *Id.* at 307. Dr. Ginsburg found no manipulative, visual, or communicative limitations, but Plaintiff needed to avoid concentrated exposure to hazards such as moving machinery and unprotected heights due her seizures *Id.* at 407-08. Dr. Ginsburg agreed with

and adopted the ALJ's decision to limit Plaintiff to a "[l]ight RFC [with] postural limitations [and] environmental precautions." *Id.* at 313.

On May 11, 2009, Dr. Middleton reviewed Plaintiff's records and affirmed the mental residual functional capacity offered by Dr. Gallucci. AR at 329. Similarly, Dr. Spellman reviewed the medical record and affirmed the physical residual functional capacity assessment set forth by Dr. Ginsburg. *Id.*

B.   Hearing Testimony

Plaintiff testified at the hearing before the ALJ on April 27, 2010. AR at 22. Plaintiff reported she had a high school education, and had not received any vocational training. *Id.* at 30. According to Plaintiff, she started work as an administrative assistant in a bank in 1976, and she "took early retirement because of [her] health" in April or May 2005. *Id.* at 30-31. After her retiring, Plaintiff said she completed one real estate deal in 2006 in which she refinanced a client's house. *Id.* at 31.

According to Plaintiff, her health "fell apart" in 2004 when she "had a heart attack, a stroke, and a seizure all in the same day." *Id.* at 35. Plaintiff said she was unable to work due to epilepsy, seizures, fatigue, headaches, dizziness, and depression. *Id.* at 32-33, 39, 44. Plaintiff reported her headaches, which she attributed to sleep apnea and stress, lasted "up to three days in a row," and the medication did not always help. *Id.* at 32, 38-40. She believed her medication caused fatigue and an inability to concentrate or remember dates. *Id.* at 32. Plaintiff estimated that she could concentrate for an hour before she needed to rest for about half an hour. *Id.* at 45.

Plaintiff said she took "a couple naps a day" for a total of approximately four hours. AR at 33, 38-39, 41. She stated the naps were unscheduled and "[a]t times" she felt rested after sleeping. *Id.* at 41. When she was unable to lay down on a particular day, Plaintiff said she felt irritable, even more tired, and did not want to be around other people. *Id.*

Plaintiff stated she had a loss of balance and dizziness that lasted for a minimum of two minutes, four or five times a day, up to four days a week. AR at 43-44. She explained she felt like she was going to fall, and it was unpleasant even to go shopping. *Id.* at 44. Plaintiff said she fell "really bad maybe once a week," but she caught herself "before anything worse happen[ed]." *Id.*

1    Plaintiff testified she received treatment through Kaiser for her physical problems.  AR at 33.
2 Plaintiff reported that she went to see the doctor every two weeks to have blood work done. *Id.* at
3 36-37.  In addition, Plaintiff kept in contact with her doctor through the Internet and emailed her
4 physician if "something unusual" came up to inquire whether she should go to the office.  *Id.* at 36.

5    She reported that she was trying to resolve her mental health issues on her own, but had
6 depression "a little bit" each day.  AR at 33, 46.  Also, Plaintiff testified she suffered from anxiety
7 attacks, for which she took medication "as needed," but not daily.  *Id.* at 35.  Plaintiff said her
8 anxiety was caused by worry that she would have another seizure, though her last seizure was two
9 years before the hearing.  *Id.* at 48-49.  Plaintiff explained it affected her ability to function because
10 she would start to cry and had to take a break.  *Id.* at 46.  Plaintiff said she no longer had suicidal
11 thoughts.  *Id.* at 47.

12   Plaintiff believed she could walk about a block, sit for a maximum of 45 minutes before she
13 needed to stand, and stand for less than an hour.  AR at 50.  She estimated that she could lift "twenty,
14 thirty pounds."  *Id.* at 50.  She said her fatigue caused her to not want to do anything such as
15 household chores.  *Id.* at 52.  Plaintiff reported she cooked, went grocery shopping, and did the
16 laundry, but she did not clean.  *Id.* at 52-53.

17   Vocational expert ("VE") Cheryl Chandler testified after Plaintiff.  The VE characterized
18 Plaintiff's past work as an "administrative clerk," DOT 219.362-010.[3]  AR at 57.  The VE explained
19 the DOT defined this as semi-skilled, light work, which appeared consistent with Plaintiff's
20 description of her work.  *Id.*  The ALJ then asked the VE to consider hypothetical individuals and
21 evaluate whether work would be available given the specific limitations.

22   First, the VE considered an individual with the limitations set forth by Dr. Shireen Damania
23 and Dr. Rustom Damania.  AR at 58; *see also* AR at 276-280, 299-303.  The individual had the
24 ability "to lift and carry 20 pounds occasionally and 10 pounds frequently; . . . to stand and walk six
25 hours out of a normal eight-hour workday with appropriate breaks; . . . [and] to sit for six hours."  *Id.*

---

[3] The *Dictionary of Occupational Titles* ("DOT") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy.  *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d)(1).

7

at 58. The individual was limited to occasional bending, stooping, and crouching, but had no further postural or manipulative limitations. *Id.* The individual had environmental limitations such as avoiding unprotected heights and dangerous moving machinery due to a seizure disorder. *Id.* With regard to mental abilities, the individual was "able to understand, carry out, and remember three and four-step job instructions in a work-like setting." *Id.* at 58-59. Further, the individual had the ability to respond appropriately to co-workers, supervisors, and the public; could respond appropriately to usual work situations; and deal with changes in a routine setting with normal supervision. *Id.* at 59. The VE opined such a person could not perform Plaintiff's past relevant work. *Id.* The VE explained the limitation to three and four-step instructions was "closer to an unskilled profile than the semi-skilled functions." *Id.*

Second, the VE considered an individual with limitations based upon the opinions of Dr. Gallucci and Dr. Ginsburg. AR at 59; *see also* AR at 295-98, 304-10. This individual could "lift and carry 20 pounds occasionally, 10 pounds frequently; stand and walk for at least six hours in an eight-hour workday; … [and] sit for about six hours." *Id.* Postural limitations included: "occasionally climbing ramps and stairs; never climbing ladders, ropes, and scaffolds; occasionally balance; frequently stooping; [and] occasionally kneeling, crouching, [and] crawling. *Id.* at 59-60. In addition, the person was required to avoid unprotected heights, moving machinery, and driving. *Id.* at 60. The individual had the ability to understand, remember, and carry out "very short and simple instructions." *Id.* Further, the ALJ specified the person could:

> [M]aintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted by them. Make simple work-related decision[s]; complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.

*Id.* Finally, the individual could ask questions, request assistance, accept criticism, respond appropriately to changes, be aware of hazards, and take appropriate precautions. *Id.* The VE concluded such a person could not perform Plaintiff's past relevant work due to the mental limitations, but was able to perform other jobs in the national economy. *Id.* As examples, the VE identified "unskilled light jobs with a seizure precaution," including work as a survey clerk (DOT.

205.367-054), information clerk (DOT 237.367-018), and general office help (DOT 239.567-010). *Id.* at 60-61.

Plaintiff's counsel asked the VE to consider an individual with the same physical limitations and seizure precautions, but with changes to the mental ability. AR at 61-62. The VE assumed the individual was "[m]oderately limited up to one third of the day" in the following abilities: to carry out detailed instructions, to maintain attention and concentration for extended periods, to interact appropriate with the general public, and to respond to changes in the work setting. *Id.* at 62. With these mental limitations, the VE opined the individual would not be able to work due to the limitations of attention and concentration. *Id.* Similarly, the VE concluded no work would be available if the individual had the same physical limitations but was required to take rest breaks up to four hours, and could concentrate for only an hour before requiring a break. *Id.* at 63.

C.  The ALJ's Findings

As an initial matter, the ALJ noted Plaintiff had filed a previous application for benefits and received a decision dated September 3, 2008. AR at 8. The ALJ did not apply the presumption of continuing non-disability because Plaintiff "presented new or material evidence warranting a change in her residual functional capacity." *Id.* However, the ALJ noted that "the September 3, 2008 decision is res judicata as to the period through that date." *Id.* The ALJ applied the five-step sequential process set forth by the Commissioner.

First, the ALJ determined Plaintiff had not engaged in substantial gainful activity since September 4, 2008, the date after the prior decision. AR at 10. Next, the ALJ found Plaintiff had severe impairments including obesity, congestive heart failure and history of aortic valve replacement, a history of intercranial hemorrhage and seizure disorder, anxiety disorder, and a history of alcohol dependence. *Id.* at 11. These impairments did not meet or medically equal a listing. *Id.* After considering "the entire record," the ALJ found:

> [T]he claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk about 6 hours and sit about 6 hours in an 8-hour workday, occasionally balance, kneel, crouch, crawl, and climb ramps and stairs, and frequently stoop, but never climb ladders, ropes, or scaffolds and she must avoid concentrated exposure to hazards including machinery and heights. Mentally, the claimant is able to remember work-like procedures and understand and remember very short and simple instructions; carry out very short and simple instructions, maintain

attention for 2-hour segments, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted by them, make simple work-related decisions, and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; and respond appropriately to changes in a routine work setting and be aware of normal hazards and take appropriate precautions.

*Id.* at 12. With this residual functional capacity ("RFC"), the ALJ concluded Plaintiff was unable to perform any past relevant work, but had the ability to perform work existing in significant numbers in the national economy, such as survey clerk, information clerk, and general office help. *Id.* at 15-16. Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. *Id.* at 16-17.

## **DISCUSSION AND ANALYSIS**

To determine whether the subjective complaints of a claimant are credible, an ALJ must determine whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007), quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991). An adverse finding of credibility must be based on clear and convincing reasons where there is no affirmative evidence of a claimant's malingering and "the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

Here, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR at 14. However, the ALJ determined Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible . . ." *Id.* Plaintiff argues that "the ALJ improperly assessed her subjective symptom testimony in assessing the residual functional capacity" and failed to set forth clear and convincing reasons to reject the testimony. (Doc. 12 at 6-7). According to Plaintiff, "the ALJ decision is void of any sufficient rationale as to why the ALJ disregards [her] testimony." *Id.* at 7.

Factors that an ALJ may consider in a credibility determination include: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment and (5) testimony of physicians concerning the nature, severity, and effect of the symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v Barnhart*, 287 F.3d 947, 958-59 (9th Cir. 2002). As an initial matter, the ALJ determined the medical record did not support Plaintiff's allegations of disabling headaches. AR at 11. Generally, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of the Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit stated, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"). Because the ALJ did not base the credibility determination solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff, the objective medical evidence was a relevant factor in determining Plaintiff's credibility.

Further, the ALJ noted Plaintiff "receives no treatment for her anxiety other than Lorazepam, which she takes only as needed." AR at 13. In assessing Plaintiff's credibility, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. § 404.1529(c). The treatment Plaintiff received, especially when conservative, is a legitimate consideration in a credibility finding. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered the physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating pain" alleged). Importantly, the Ninth Circuit has "indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750 (9th

Cir. 2007). In addition, when an impairment "can be controlled effectively with medication," the impairment cannot be considered disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Therefore, the fact that Plaintiff took medication on an "as needed" basis is a clear and convincing reason in support of the credibility determination.

The ALJ observed inconsistencies in Plaintiff's testimony and that Plaintiff's "allegations of concentration and memory impairment are inconsistent with the consultative psychiatric examination." AR at 11, 13. For example, the ALJ noted Plaintiff "testified she experiences daily headaches lasting up to three days," but reported to a physician that her headache "lasted briefly." AR at 11. The ALJ observed that Plaintiff "testified that she does not do housework except for laundry, but her sister and the consultative examiner reported that she does light housework and the claimant reported in a function report that daily she performs chores that 'need to be done.'" *Id.* Further, Plaintiff testified that her concentration was impaired, but the consultative examiner found Plaintiff had the ability to remember "three out of three objects in three minutes." *See* AR at 13, citing AR at 278. An ALJ may consider "conflicts between the claimant's testimony and [her] conduct, or internal contradictions in the testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (an ALJ may consider "ordinary techniques of credibility evaluation, such as … prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid"). Consequently, the inconsistent statements offered by Plaintiff and the inconsistencies between her testimony and conduct at the consultative examination were clear and convincing reasons for rejecting her credibility. *Id.*; *Fair*, 885 at 604 n.5.

Plaintiff asserts the ALJ failed to consider her positive work history, which was "probative of credibility." (Doc. 12 at 12). However, this argument misconstrues the requisite standard of review. Previously, this Court explained: "It is not the role of the Court to redetermine Plaintiff's credibility *de novo.* If the ALJ's interpretation of the evidence was rational, as it was here, the Court must uphold the ALJ's decision…" *Higgins v. Astrue*, 2010 U.S. Dist. LEXIS 63532 at *26 (E.D. Cal. June 4, 2010). The ALJ's credibility findings were "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily

1  discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d at 885. Therefore, the findings
2  must be upheld though the ALJ did not consider *all* possible factors. *See Crane v. Shalala*, 76 F.3d
3  251, 254 (9th Cir. 1995)) ("Although the findings upon which this determination was based were not
4  as extensive as they might have been, they sufficed to show that the ALJ did not arbitrarily reject [the
5  claimant's] testimony.")

## CONCLUSION

For all these reasons, the Court concludes the ALJ set forth clear and convincing reasons for finding Plaintiff's subjective complaints lacked credibility, supported by substantial evidence in the record. As a result, the opinion applied the correct legal standards and must be upheld by the Court. *See Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is **DENIED**; and
2. The Clerk of Court IS DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Maria Elena Avila.

IT IS SO ORDERED.

Dated:  **September 23, 2011**                    /s/ Jennifer L. Thurston
                                                  UNITED STATES MAGISTRATE JUDGE